UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RODNEY GASKILL,<br><br>   Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY<br>OF NORTH AMERICA<br>D/B/A/ CIGNA INSURANCE GROUP<br>   Serve at:<br>      1601 Chestnut Ave.<br>      Two Liberty Place<br>      Philadelphia, PA   19192<br><br>and,<br><br>SOUTHEAST MISSOURI HOSPITAL<br>   Serve at:<br>      ATTN: Daniel Berry<br>      1701 Lacey St.<br>      Cape Girardeau, MO 63701<br><br>   Defendants. | Case No.: |

## COMPLAINT

COMES NOW, Plaintiff, Rodney Gaskill, by and through counsel, Bollwerk & Tatlow, LLC, and for his Complaint states as follows:

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. Sec. 1001 et seq. (ERISA), to recover benefits due under an employee insurance program, to redress breaches of fiduciary duties under ERISA, and to recover costs and attorneys' fees provided by ERISA.

## JURISDICTION AND VENUE

2. This is an action brought pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. Under 29 U.S.C. § 1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3. Venue is proper in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the subject employee welfare benefit plan and employee insurance program are administered in this District, the breaches of duty herein alleged occurred in this District, or a Defendant resides or may be found in this District, and, pursuant to 28 U.S.C. § 1391(b), in that the cause of action arose in this District.

## PARTIES

4. Plaintiff Rodney Gaskill (hereinafter "Plaintiff") is an individual residing in Missouri. Plaintiff is a vested participant in the Group Insurance Plan (hereinafter, "the Plan") for certain employees of Southeast Missouri Hospital (hereinafter, "Southeast"), which provides an employee benefits plan within the meaning of 29 U.S.C. § 1002. He has standing to bring this action under 29 U.S.C. § 1132(a).

5. Defendant Cigna Insurance Company (hereinafter, "Cigna") and Defendant Southeast Missouri Hospital (hereinafter, "Southeast") provide coverage for certain employees of Southeast under an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1). Cigna was an administrator of a disability benefits plan operated by Southeast. Both Defendants do business in Missouri and are authorized to sue and be sued in Missouri.

6. Southeast is a private, not-for-profit hospital located in Cape Girardeau, Missouri. Southeast is a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).

2

Southeast is a "party in interest" within the meaning of 29 U.S.C § 1002 (14).

7. Cigna is the insurance company offering coverage under the Plan. Cigna makes its decisions in conjunction with Southeast regarding coverage under the Plan as one of the Claims Administrators.

### COUNT I: LIABILITY FOR BENEFITS
### GASKILL v. LIFE INSURANCE COMPANY OF NORTH AMERICA D/B/A CIGNA INSURANCE GROUP

COMES NOW, Plaintiff Rodney Gaskill, and for Count I of his complaint against Life Insurance Company of North America d/b/a/ Cigna (LICNA) states the following:

8. Under the Plan, benefits may be payable while the insured is totally and permanently disabled if the insured is:

   a) unable to perform the material duties of his or her regular occupation; and
   b) is unable to earn 80% or more of his or her indexed earnings from working in his or her regular occupation

9. Under the plan, after disability benefits have been payable for 24 months, the employee is considered disabled if, solely due to injury or sickness, he or she is:

   a) unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience, and
   b) is unable to earn 80% or more of his or her indexed earnings.

10. Mr. Gaskill was employed as a full time employee by Southeast Hospital in the state of Missouri for sixteen (16) years, and prior to that worked seven (7) years for Arch Air. During this period of time he was a "covered person" under the Plan.

11. During that period of time, Plaintiff became permanently and totally disabled

3

while he was working as a nurse at Southeast Hospital. He was not able to perform the material and substantial duties of his job during the first twenty-four (24) months of his disability, and thereafter has not been able to perform the material and substantial duties of any gainful job for which he is reasonably fitted by his education, training or experience. As such, he is entitled to payments for Total and Permanent Disability benefits under the Plan.

12. Plaintiff submitted his claim for benefits to Cigna on or about March 14, 2013, Plaintiff alleged that he was Totally and Permanently disabled such that he could not perform any job in the open labor market that he was qualified to perform based on his education, training and work experience and could not earn over 80% of his indexed earnings. Plaintiff alleged that his disability resulted from a combination of physical and mental deficits including but not limited to:

   a) Stroke, bilateral hip claudication
   b) COPD, sleep apnea
   c) Exertional shortness of breath
   d) History of occipital stroke
   e) Peripheral artery disease with claudication in the common femoral arteries and to lower extremities (PAD)
   f) Osteoarthritis
   g) Chronic denervation at C6-C8
   h) Right peripheral vision loss-including homonymous hemianopsia
   i) Degenerative disc disease
   j) Hypertension
   k) Obesity
   l) Right sided C5 radiculopathy
   m) High Cholesterol
   n) Chronic nerve damage
   o) C3-C5 degenerative disc disease
   p) Bilateral shoulder pain requiring ongoing injections, bursitis
   q) Neck Pain
   r) Lower Back Pain
   s) Right and left paresthesias of the hands
   t) Spinal stenosis of C3-C5
   u) Abnormal Echocardiogram

      v) Hypertensive cardiomyopathy
      w) Dilated left atrium
      x) Bilateral hip pain with ambulation
      y) Ankle brachial indexes
      z) Hand numbness

13. Plaintiff supported his allegations with medical records including MRIs, X-rays, CT scans, and opinions from his treating physicians who found Mr. Gaskill was disabled and a vocational expert and Psychologist, Dr. Stock, who opined that Mr. Gaskill could not perform work in the labor market, along with recorded statements of his subjective complaints and conditions.

14. Defendants sent Plaintiff's file to Tanisha Taylor, M.D. for a record's review on May 26, 2015. The Defendants denied Plaintiff's claim on June 17, 2015. Plaintiff submitted an appeal that was timely under the Plan, to Defendants on December 14, 2015, and supplemented his claim with additional evidence.

15. Neither Cigna nor Southeast Hospital has claimed that Plaintiff was not covered under the Plan; they originally granted his claim but later denied his claim because they determined that the documentation did not support a physical impairment that would prevent him from performing the duties of <u>any gainful occupation</u> on a permanent basis.

16. Cigna's occupational medicine physician believed the evidence supports a worsening of his condition and an inability to do any employment. No sedentary and light duty occupations were found which would satisfy his policy.

17. Dr. Sharon Wallace found that Mr. Gaskill is disabled due to his weakness and vision loss, mainly the persistent right arm weakness, paresthesias in both hands and arms, and vision loss and cannot return to any work. Dr. Taylor had found that Plaintiff had significant restrictions on lifting, carrying, pushing, pulling, climbing stairs, stooping,

5

bending, kneeling, crawling, crouching, sitting, reaching, and use of lower extremities.

    a.)    Dr. Vaught, a treating physician of Mr. Gaskill's, found him permanently and totally disabled due to a herniated nucleus pulposus of the cervical spine and persistent right arm weakness and paresthesias of the hand and arms and vision loss.

    b.)    Dr. Koonce, a treating neurologist of Mr. Gaskill, diagnosed him with a stroke and right homonymous hemianopsia (loss of half of the field of vision on same side in both eyes), making him unsafe to drive.

18. Providers at Regional Brain and Spine LLC., a facility where Mr. Gaskill was treated, also found that Mr. Gaskill is permanently disabled. Their physician's opinion opined that there is no realistic opportunity for gainful employment for the patient due to his visual problems.

19. Cigna and Southeast Hospital denied Plaintiff's claim based on the functional capacity evaluation (FCE) by physical therapist, Jacob Pattengill, and a transferable skills analysis based upon Mr. Pattengill's report. Cigna relied heavily on this flawed FCE and transferable skills analysis to determine that Mr. Gaskill was capable of becoming a telephonic triage nurse.

20. Plaintiff asserts, and reasonably believes, the Defendants' reliance is based on a fraudulent FCE by Jake Pattengill, therapist, which inaccurately reports Mr. Gaskill's physical abilities. Mr. Gaskill asserted throughout the claim's process that Mr. Pattengill did not perform a full FCE and artificially inflated the time he performed certain circuits/tasks during the FCE and misrepresented the findings in order to show Mr. Gaskill had completed a full performance of a circuit when he did not. Therapist Pattengill also had an intern administer the testing and Mr. Pattengill did not physically

observe all of the testing.

21. During the FCE, Mr. Gaskill was unable to finish parts of the testing. He could not finish the second half of it due to there being medical concerns by the therapist and intern of his increased heart rate, elevated blood pressure, and physical inability to complete the exam. The intern and therapist were monitoring his heart rate and blood pressure and during part of the test were concerned and made him stop due to these medical concerns. Mr. Gaskill's heart rate and blood pressure were highly elevated during treadmill testing and he was told to stop the testing before completing even half of the testing. Mr. Gaskill later overheard Mr. Pattengill tell his intern and/or staff that he would inflate the time Mr. Gaskill performed the testing and adjust the numbers upward to make it appear that Mr. Gaskill had completed a full circuit on the test, even though Mr. Gaskill had not done so and even though he was physically unable to do so. It is believed he may have inflated other parts of the test as well.

22. Mr. Gaskill confronted Mr. Pattengill with this issue in letters to Mr. Pattengill and to Cigna as part of the appeal process. The letters are part of the Administrative Record. Despite this misrepresentation of Mr. Gaskill's abilities and Mr. Gaskill not being able to complete the testing, Cigna relied on such false testing and denied his claim. Cigna never responded to Plaintiff or counsel's assertions that the FCE was flawed and based upon false data and that the results were unreliable. Plaintiff believes Cigna is engaging in a fraudulent pattern and practice of denials of disability benefits in this case and in other cases including cases of S.T. (name confidential), R.D. (name confidential), R.P. (name confidential) and by hiring consultants, practitioners or medical doctors who introduce false evidence in the claim's process, who misstate treating physician's

findings, who ignore substantial and competent evidence, all in an effort to make more money for the company. These other three cases are similar to the Gaskill matter in several respects including: they are all claims of Long-Term Disability, the parties are all over fifty (50) years old and three are in the mid to upper 50's, and all have not done any other work other than the job they became disabled from for many years. Each individual was required by Defendant's own plan to apply for Social Security Disability, was granted Social Security Disability and Cigna (Life Insurance Company of North America) relied on the Social Security decisions to offset each persons' disability payment. In the claims of RD, RP, and Gaskill, Cigna initially granted the LTD claims and the individual's jobs were lost or eliminated, but later Cigna (Life Insurance Company of North America: (LICNA)) cut them off by hiring consultants and experts, some of whom claim that there is no objective medical evidence to support the severity of the disabilities, when there is objective evidence to support the disabilities. In addition, Cigna's consultants claim that several of the treating medical providers say things that the treaters deny as to the patient's/insured's abilities to work.

23. The Gaskill FCE falsely demonstrates or shows inaccurate abilities which Mr. Gaskill is unable to perform. The FCE incorrectly records tests, abilities, and results that Mr. Gaskill did not and could not perform. The vocational consultant performing the transferable skills analysis for Cigna (LICNA) relied on this testing to find that at most, Mr. Gaskill could be a telephone triage nurse, despite the false results of the testing. Cigna (LICNA) did not advise the vocational consultant that Mr. Gaskill or his attorney claims the FCE is fraudulent or inaccurate. Cigna either ignored the assertions of Mr. Gaskill and the undersigned or did not believe them but failed to rebut this evidence in

the claim's process and deprived Mr. Gaskill of a full and fair review.

24. The actions of Cigna referred to in paragraph 19-23 are a violation of ERISA's duties imposed upon a plan fiduciary to administer the Plan truthfully and fairly to its plan participants. In addition to violating ERISA's fiduciary duty requirement to Mr. Gaskill to be honest and operate in good faith, Cigna's conduct in hiring a physical therapist or tester that introduces false evidence, and then relying on it to deny Mr. Gaskill's claim, violates Missouri State Insurance regulations governing unfair claim's practices. Such regulations are saved from preemption and are admissible to lower the standard of review in this case to *De Novo*. Cigna is required to operate in good faith and is required to follow Missouri State regulations governing all insurers, even though this is an ERISA case and Cigna's conduct in the Gaskill, R.D., S.T., and R.P. matters all show a pattern of violating such unfair claims' practices and in violating ERISA's fiduciary duty requirements.

25. The standard of review on the ERISA claims review should be *De Novo* as Cigna has a financial conflict of interest, ignored treating physicians' opinions, paid for and obtained false FCE exams, failed to consider Plaintiff's evidence and withheld plan documents, depriving Plaintiff of a full and fair review.

26. Plaintiff believes that an injunction against Cigna to prevent it from engaging in such fraudulent behavior is needed to prevent harm to other participants.

WHEREFORE, Plaintiff, and for Count I of his complaint against LICNA d/b/a/ Cigna, moves for judgment for actual benefits, interest, and attorney's fees and for such further relief as the Court deems appropriate.

## PENALTIES AND DAMAGES
## GASKILL v. CIGNA and SOUTHEAST MISSOURI HOSPITAL

27. Southeast Missouri Hospital is the plan administrator of the plan and charged with responsibility to produce certain documents to the Plaintiff under the plan. Defendant, Cigna, also has an obligation to pursue production of certain policies and documents including the items referred to in paragraph #29. Plaintiff is entitled to disability benefits under the plan in the amount of 60% of his monthly earnings up to $15,000.00 per month, a cost of living increase after the first twelve (12) monthly benefits that should have been paid are recouped at 4% per annum, to survivor benefits and optional benefits of up to $5,000.00 per month (core) and $7,500.00 per month (optional) benefits. In addition, Plaintiff is entitled to interest on each monthly benefit amount due compounded monthly to the date of the judgment.

28. Plaintiff is entitled to recover reasonable, penalties, attorney's fees and costs of this action, pursuant to 29 U.S.C. § 1132 (g).

29. Defendants failed to produce all documents requested by Plaintiff via certified mail on or about December 14 2015, April 27, 2016, and June 14, 2016. This includes the statements of policy or guidance or procedure that were relied upon in determining the case, the Form 5500, the entire claims file and other plan documents requested in correspondence sent both to Cigna (LICNA) and to Southeast Missouri Hospital. Defendants did not produce the complete administrative record until after Plaintiff's appeal process had run, prejudicing his rights and the right to a full and fair review.

WHEREFORE, Plaintiff respectfully prays that this Court award his claim for benefits, plus any actual and punitive damages allowable to Plaintiff, against both Defendants, Cigna and

10

Southeast Hospital, including but not limited to all past due benefits, penalties, interest on past due sums, reasonable attorneys' fees and costs and for such further relief as this Court deems appropriate.

Respectfully submitted,

//S// Phillip A. Tatlow
Phillip A. Tatlow, #41364 MO
Bollwerk & Tatlow, LLC
10525 Big Bend Boulevard
Kirkwood, MO 63122
(314) 315-8111
(314) 315-8113 (Fax)
pat@bollwerktatlow.com

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

| | | |
|---|---|---|
| Rodney Gaskill | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| Life Ins. Co. of N.Amer d/b/a Cigna Insur. Grp., et al | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: Life Insurance Company of North America d/b/a Cigna Insurance Group & Southeast Missouri Hospital
*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within 45 days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: 5-17-17

*Signature of the attorney or unrepresented party*

Phillip A. Tatlow
*Printed name*

Bollwerk & Tatlow, LLC.
10525 Big Bend Blvd.
St. Louis, MO 63122
*Address*

pat@bollwerktatlow.com
*E-mail address*

314-315-8111
*Telephone number*